UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WALTER J. TORNSTROM, | ) | Case No. 1:19-cv-2874 |
| | ) | |
| Plaintiff, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge David A. Ruiz |
| | ) | |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, | ) ) ) | |
| | ) | |
| Defendant. | ) ) | |

**OPINION AND ORDER**

Plaintiff Walter Tornstrom filed suit under the Federal Tort Claims Act against the United States Environmental Protection Agency, alleging the agency disposed of hazardous chemicals belonging to Karl Industries, Inc., which is not a party to this suit. Defendant seeks summary judgment. Construing the facts in the light most favorable to Plaintiff, the complaint fails to allege that Mr. Tornstrom suffered an actual injury or harm as a result of Defendant's actions. Therefore, the Court concludes that Plaintiff lacks standing to pursue his claim, depriving the Court of jurisdiction.

**STATEMENT OF FACTS**

Plaintiff Walter Tornstrom's brother, Paul Tornstrom, owned a business named Karl Industries, Inc. in Aurora, Ohio. (ECF No. 21-2, PageID #129.) Karl Industries stored several large drums of various chemicals on its property for sale to other businesses. (*Id.*, PageID #100–01.) Over the years, the brothers' mother loaned

Paul Tornstrom money to assist with the business. (*Id.*, PageID #91–92.) After she died, the brothers split her note for the loans. (*Id.*, PageID #92.) The total amount of the debt, with interest, came to $236,991 as of December 16, 2019. (*Id.*, PageID #112.)

Plaintiff did not own any of Karl Industries' assets or inventory, including the chemicals at issue here. (ECF No. 21-2, PageID #96.) To protect his right to repayment on his half of the loan, Plaintiff executed a lien with the State of Ohio, specifically a U.C.C. financing statement acknowledging the debt and his right to collateral in the inventory of Karl Industries. (*Id.*, PageID #91–93; *see also* ECF No. 21-2, PageID #125.) Pursuant to the financing statement, which Plaintiff refers to as a "promissory note," Plaintiff claims he had a "property interest in the assets of Karl Industries through his promissory note." (ECF No. 22-1, PageID #223.) In 2008, the lien expired, and Mr. Tornstrom did not file a continuation statement. (ECF No. 21-2, PageID #109, 120–21.) Apart from the inventory stored on Karl Industries' property, which Karl Industries owned, Plaintiff claims he may have owned, at most, one 55-gallon drum containing methylene chloride. (*Id.*, PageID #102–03.)

    **A.**    **Fire at Karl Industries**

On December 31, 2016, a fire erupted at Karl Industries which destroyed the building housing the chemicals at issue. (*Id.*, PageID #99, 104.) Officials from the Mantua Fire Department, who were among the first responders to the fire, subsequently notified the Ohio EPA that "water flowing from the former location . . .

exhibited an orange color and was flowing towards an adjoining wetland." (ECF No. 21-3, PageID #156.)

After an investigation, the Ohio EPA issued a notice of violation to Karl Industries for unauthorized release of water and liquids under State law. (*Id*.) Subsequently, the Ohio EPA requested that the U.S. EPA attend a follow-up inspection at Karl Industries. (*Id*.) After additional notices to Karl Industries, the U.S. EPA began removing the hazardous chemicals from the plant. (ECF No. 21-4, ¶ 4, PageID #215.)

Employees from the Ohio EPA and U.S. EPA met with Paul Tornstrom on September 27, 2017 to explain why the agencies deemed all chemicals located on site to be waste. (*Id*., ¶ 5.) In their view, the chemicals removed from Karl Industries had no monetary value. (*Id*., ¶ 11.) By December 8, 2017, all hazardous chemicals were removed from Karl Industries pursuant to U.S. EPA's authority under Section 104(a) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, and at U.S. EPA's cost, which amounted to approximately $650,992.52. (*Id*., ¶¶ 3-12, PageID #215–16.)

B.  **Pre-Suit Administrative Claim**

Plaintiff filed a claim with U.S. EPA for $236,991.00 for the chemicals removed from Karl Industries. (ECF No. 21-2, PageID #129.) Determining that the chemicals at issue were properly removed pursuant to U.S. EPA's authority under CERCLA, the agency denied the claim. (*Id*., PageID #130.) In its notice of denial, U.S. EPA

3

advised Plaintiff that, if dissatisfied with the denial of his claim, he could file suit within six months (*id.*), which he did (*see* ECF No. 1).

## STATEMENT OF THE CASE

Based on these allegations, Plaintiff proceeding *pro se* asserts a single claim under the Federal Tort Claims Act. (ECF No. 1, PageID #6.) Plaintiff seeks $236,991.00 in actual damages, plus interest, attorney's fees, and costs. (*Id.*, PageID #7.) Defendant moves for summary judgment, arguing Plaintiff did not have a property interest in the hazardous chemicals, which, Defendant also argues, were valueless at the time of their removal in any event.

## JURISDICTION

Because of the limited jurisdiction of the federal courts, the Court has an independent obligation to examine its own jurisdiction and ensure that it has the authority to proceed. *See, e.g., Nikolo v. Lyon*, 875 F.3d 310, 315 (6th Cir. 2017) (citations and quotations omitted). Standing presents a "threshold determinant[] of the propriety of judicial intervention." *Warth v. Seldin*, 422 U.S. 490, 517–18 (1975). "[A]t an irreducible minimum, Article III requires the party who invokes the court's authority to show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant" and that "the injury fairly can be traced to the challenged action and is likely to be redressed by a favorable decision." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 542 (1986) (cleaned up).

As the party invoking federal jurisdiction, Plaintiff has the burden of showing that he has standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). In this case, Plaintiff cannot show that he suffered an injury in fact under the governing Article III principles. Therefore, the Court begins and ends its analysis there.

## I. Injury in Fact

To establish injury in fact, a plaintiff must show that he suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan,* 504 U.S. at 560. A particularized injury "affect[s] the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (quotation omitted). In other words, the plaintiff "must allege personal injury." *Id.* (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006)). Particularization is a necessary but not sufficient requirement for standing. *Id.* An injury must also be concrete, which means it must actually exist. *Id.* (citing Black's Law Dictionary 479 (9th ed. 2009)). A concrete injury is real and not abstract, but not necessarily tangible. *Id.* (citations omitted).

Intangible injuries premised on statutory violations may satisfy Article III's injury-in-fact requirement. *Huff v. Telecheck Servs.*, 923 F.3d 458, 464 (6th Cir. 2019). But such a claim still requires a concrete injury. *Id.* at 465 (quoting *Spokeo*, 136 S. Ct. 1549) (citations omitted). Although policing the border between claims alleging statutory violations for which a plaintiff has standing and those not alleging concrete harm may prove difficult at times, standing principles require that the alleged violation cause adverse consequences. *Id.*

## II.    Plaintiff's Lack of Injury

Plaintiff alleges a violation of the Federal Tort Claims Act.  Without question, Plaintiff has no ownership interest in Karl Industries.  Nor does he own its inventory.  (ECF No. 21-2, PageID #96.)  Instead, Plaintiff has a promissory note secured by the chemicals Defendant removed in performing its administrative duties following a fire that caused a discharge of hazardous chemicals into a wetland.  According to the record, the chemicals themselves had no monetary value.  (ECF No. 21-4, ¶ 11, PageID #216.)

Construing the record in Mr. Tornstrom's favor as the non-moving party, Plaintiff fails to allege a concrete injury resulting from any allegedly tortious conduct on the part of Defendant or its employees.  Under *Lujan*, Plaintiff is required to demonstrate that his alleged injury is of a "legally protected interest" that is "concrete and particularized."  *Lujan*, 504 U.S. at 561.  But he has not and cannot do so.

Defendant's actions have not caused Plaintiff any concrete injury.  At best, Plaintiff may have had a "legally protected" interest in the inventory of Karl Industries (and the record shows Mr. Tornstrom's lien lapsed in 2008).  But the inventory served as collateral for a note, which Mr. Tornstrom presumably still possesses.  Moreover, in an action against a governmental agency, the standing inquiry "depends considerably upon whether the plaintiff is himself an object of the action . . . at issue.  If he is, there is ordinarily little question that the action or inaction has caused him injury."  *Lujan*, 504 U.S. at 561.  But where, as here, an alleged injury "arises from the government's allegedly unlawful regulation (or lack of

6

regulation) of *someone else,* much more is needed." *Id*.  In such a case, the Supreme Court places the burden squarely on the plaintiff to demonstrate facts showing that the choices of non-parties not before the court acted in such a manner "as to produce causation and permit redressability of injury." *Id*. (*citing Warth*, 422 U.S. at 505). Because Plaintiff cannot carry this burden on the record here, he lacks standing, and the Court is deprived of subject-matter jurisdiction to proceed further.

## CONCLUSION

At bottom, Plaintiff fails to allege that he sustained injury in fact arising from the agency conduct he challenges.  Although Defendant destroyed the hazardous chemicals belonging to Karl Industries, Inc. pursuant to its statutory authority, and those chemicals served as collateral for a promissory note Plaintiff held, such an interest on the record presented is too remote and attenuated to constitute the type of concrete and particularized injury that would allow the Court to adjudicate this dispute.

For all the foregoing reasons, the Court **DISMISSES** Plaintiff's complaint for lack of standing and directs the Clerk to enter judgment accordingly.

**SO ORDERED.**

Dated:  April 21, 2021

J. Philip Calabrese
United States District Judge
Northern District of Ohio